IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

TRAVIS THORNTON, # M-25761,

    Plaintiff,

vs.                                  Case No. 17-cv-415-DRH

JEFFERY DENNISON,
DR. DAVID,
and WEXFORD HEALTH SOURCES, INC.,

    Defendants.

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff, currently incarcerated at Shawnee Correctional Center ("Shawnee"), has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff claims that Defendants were deliberately indifferent to his serious medical condition. This case is now before the Court for a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A.

Under § 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a). The Court must dismiss any portion of the complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. 28 U.S.C. § 1915A(b).

An action or claim is frivolous if "it lacks an arguable basis either in law or

in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that "no reasonable person could suppose to have any merit." *Lee v. Clinton*, 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id.* at 557. Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Additionally, Courts "should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Id.* At the same time, however, the factual allegations of a pro se complaint are to be liberally construed. *See Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

Applying these standards, the Court finds that some of Plaintiff's claims survive threshold review under § 1915A.

## The Complaint

On October 16, 2016, Plaintiff submitted a sick call request because he was suffering from a painful ingrown toenail. (Doc. 1, p. 5). He subsequently was seen by a nurse, who referred him to the nurse practitioner. On November 15, 2016, the nurse practitioner saw that Plaintiff's toe was infected and discharging a clear liquid mixed with blood. She prescribed Lamisil, but this did not help the infection or relieve Plaintiff's pain.

On December 6, 2016, Plaintiff submitted another sick call slip, but was not seen for nearly a month. By the time Plaintiff saw Dr. David, the nail had become "a deep open wound" discharging yellowish fluid and blood. The pain had increased to the point that Plaintiff could not put weight on his foot, had to walk on the back of his shoe, and could not wear a sock unless he cut out the toe to relieve the pressure. Dr. David prescribed Bactrim and foot soaks. Plaintiff asked Dr. David to remove the ingrown toenail to relieve his intense pain, but David responded that "they don't remove ingrown toenails at Shawnee," and assured Plaintiff that the medication and foot soaks would take care of his condition. (Doc. 1, p. 6).

On December 29, 2016, Plaintiff filed an emergency grievance to Warden Dennison, complaining that he was not getting proper treatment. Specifically, Plaintiff was only getting foot soaks, which were making the problem worse; he was given no bandages to cover the open wound; Dr. David refused to remove the ingrown nail; the antibiotics had not cured the infection and the toe continued to

bleed non-stop; and his toe was black and purple. (Doc. 1, p. 6; Doc. 1-1, pp. 5-8). Dennison never responded to Plaintiff's emergency grievance.

On January 6, 2017, Plaintiff saw the nurse practitioner again because the infection was worse. His toe would "pour blood" if it was moved the wrong way, and had turned dark purple. She referred Plaintiff to Dr. David, who saw him on January 11, 2017. (Doc. 1, p. 6). Dr. David prescribed Cipro and more foot soaks. However, he failed to issue Plaintiff a low-bunk or low-gallery permit even though Plaintiff stated he was missing meals because of the pain from walking up the stairs, and suffered great pain each time he had to climb up or down from the top bunk. (Doc. 1, pp. 6-7). Dr. David again refused to remove the ingrown toenail, saying it would heal itself.

On February 3, 2017, Plaintiff sought help again due to the ongoing or recurring infection; the toe was still dark purple and draining fluid and blood. The nurse practitioner prescribed more Cipro and recommended to Dr. David that the ingrown nail be cut out. (Doc. 1, p. 7).

On March 3, 2017, Plaintiff saw Dr. David again and begged him to do something to relieve the unbearable pain that was keeping Plaintiff up at night and causing him to be unable to wear regular shoes and socks. (Doc. 1, p. 8). Dr. David gave Plaintiff a permit to wear shower shoes, but again refused to cut out the problem toenail.

On April 4, 2017, at Plaintiff's next visit to Dr. David, the infected toe had not improved and the wound was still open. When Dr. David proposed to

bleed non-stop; and his toe was black and purple. (Doc. 1, p. 6; Doc. 1-1, pp. 5-8). Dennison never responded to Plaintiff's emergency grievance.

On January 6, 2017, Plaintiff saw the nurse practitioner again because the infection was worse. His toe would "pour blood" if it was moved the wrong way, and had turned dark purple. She referred Plaintiff to Dr. David, who saw him on January 11, 2017. (Doc. 1, p. 6). Dr. David prescribed Cipro and more foot soaks. However, he failed to issue Plaintiff a low-bunk or low-gallery permit even though Plaintiff stated he was missing meals because of the pain from walking up the stairs, and suffered great pain each time he had to climb up or down from the top bunk. (Doc. 1, pp. 6-7). Dr. David again refused to remove the ingrown toenail, saying it would heal itself.

On February 3, 2017, Plaintiff sought help again due to the ongoing or recurring infection; the toe was still dark purple and draining fluid and blood. The nurse practitioner prescribed more Cipro and recommended to Dr. David that the ingrown nail be cut out. (Doc. 1, p. 7).

On March 3, 2017, Plaintiff saw Dr. David again and begged him to do something to relieve the unbearable pain that was keeping Plaintiff up at night and causing him to be unable to wear regular shoes and socks. (Doc. 1, p. 8). Dr. David gave Plaintiff a permit to wear shower shoes, but again refused to cut out the problem toenail.

On April 4, 2017, at Plaintiff's next visit to Dr. David, the infected toe had not improved and the wound was still open. When Dr. David proposed to

continue the same treatment of foot soaks, Plaintiff broke down in tears and begged him to have the toenail removed, because he had been in pain since late October and could not take it anymore. The foot soaks had just made the problem worse, and Plaintiff could not walk properly, had missed meals, and could not engage in normal activities. Dr. David agreed to recommend that the toenail be removed, but could not guarantee this procedure would be approved. Dr. David did not respond to Plaintiff's inquiry as to why he had not taken this step months ago. (Doc. 1, p. 9).

On April 12, 2017, Plaintiff was sent to an outside physician, who performed surgery that day on Plaintiff's infected toe.

Plaintiff seeks compensatory and punitive damages for the violation of his rights. (Doc. 1, pp. 9-10).

Finally, Plaintiff includes with his documents an affidavit from a fellow prisoner who states that he prepared the Complaint for Plaintiff because Plaintiff cannot read or write, and requests the Court to appoint an attorney for Plaintiff. (Doc. 1-1, pp. 1-2). However, Plaintiff has not submitted a motion for the recruitment of counsel. The Clerk shall be directed to send Plaintiff a form motion so that he may properly place this request before the Court.

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise

continue the same treatment of foot soaks, Plaintiff broke down in tears and begged him to have the toenail removed, because he had been in pain since late October and could not take it anymore. The foot soaks had just made the problem worse, and Plaintiff could not walk properly, had missed meals, and could not engage in normal activities. Dr. David agreed to recommend that the toenail be removed, but could not guarantee this procedure would be approved. Dr. David did not respond to Plaintiff's inquiry as to why he had not taken this step months ago. (Doc. 1, p. 9).

On April 12, 2017, Plaintiff was sent to an outside physician, who performed surgery that day on Plaintiff's infected toe.

Plaintiff seeks compensatory and punitive damages for the violation of his rights. (Doc. 1, pp. 9-10).

Finally, Plaintiff includes with his documents an affidavit from a fellow prisoner who states that he prepared the Complaint for Plaintiff because Plaintiff cannot read or write, and requests the Court to appoint an attorney for Plaintiff. (Doc. 1-1, pp. 1-2). However, Plaintiff has not submitted a motion for the recruitment of counsel. The Clerk shall be directed to send Plaintiff a form motion so that he may properly place this request before the Court.

## Merits Review Pursuant to 28 U.S.C. § 1915A

Based on the allegations of the Complaint, the Court finds it convenient to divide the *pro se* action into the following counts. The parties and the Court will use these designations in all future pleadings and orders, unless otherwise

directed by a judicial officer of this Court. The designation of these counts does not constitute an opinion as to their merit. Any other claim that is mentioned in the Complaint but not addressed in this Order should be considered dismissed without prejudice.

> **Count 1:** Eighth Amendment deliberate indifference claim against Dr. David, for delaying necessary treatment and persisting with ineffective treatment for Plaintiff's infected toe;
>
> **Count 2:** Eighth Amendment deliberate indifference claim against Warden Dennison, for failing to address Plaintiff's complaints that medical staff had denied effective treatment for his serious infection;
>
> **Count 3:** Eighth Amendment deliberate indifference claim against Wexford Health Sources, Inc., in relation to the delay and ineffective treatment for Plaintiff's toe condition.

Accepting Plaintiff's allegations as true, Counts 1 and 2 survive review under § 1915A and shall proceed for further consideration. However, Count 3 fails to state a claim upon which relief may be granted, and shall be dismissed without prejudice.

### Count 1 – Deliberate Indifference – Dr. David

In order to state a claim for deliberate indifference to a serious medical need, an inmate must show that he (1) suffered from an objectively serious medical condition; and (2) that the defendant was deliberately indifferent to a risk of serious harm from that condition. The Seventh Circuit considers the following to be indications of a serious medical need: (1) where failure to treat the condition could "result in further significant injury or the unnecessary and wanton infliction

of pain"; (2) "[e]xistence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment"; (3) "presence of a medical condition that significantly affects an individual's daily activities"; or (4) "the existence of chronic and substantial pain." *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).

"Deliberate indifference is proven by demonstrating that a prison official knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk. Delaying treatment may constitute deliberate indifference if such delay exacerbated the injury or unnecessarily prolonged an inmate's pain." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (internal citations and quotations omitted). *See also Farmer v. Brennan*, 511 U.S. 825, 842 (1994); *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). The Eighth Amendment does not give prisoners entitlement to "demand specific care" or "the best care possible," but only requires "reasonable measures to meet a substantial risk of serious harm." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Notably, a defendant's inadvertent error, negligence or even ordinary malpractice is insufficient to rise to the level of an Eighth Amendment constitutional violation. *See Duckworth v. Ahmad*, 532 F.3d 675, 679 (7th Cir. 2008).

However, an Eighth Amendment claim may be stated where a prison doctor persists in a course of treatment known to be ineffective, fails to order further testing or refuses to refer the inmate to a specialist. *Greeno v. Daley*, 414 F.3d 645, 655 (7th Cir. 2005) (doctor continued ineffective treatment, and refused to

order endoscopy or specialist referral over a two-year period during which plaintiff suffered from ulcer). *See also Edwards v. Snyder*, 478 F.3d 827, 832 (7th Cir. 2007) ("a plaintiff's receipt of *some* medical care does not automatically defeat a claim of deliberate indifference if a fact finder could infer the treatment was 'so blatantly inappropriate as to evidence intentional mistreatment likely to seriously aggravate' a medical condition"); *Kelley v. McGinnis*, 899 F.2d 612, 616-17 (7th Cir. 1990) (inmate may prevail if he can prove that defendant "deliberately gave him a certain kind of treatment knowing that it was ineffective" (citing *Estelle v. Gamble*, 429 U.S. 97, 104 n.10 (1976)).

Here, Plaintiff describes a serious, painful, and persistent condition that clearly required medical attention. The Complaint thus satisfies the objective component of an Eighth Amendment claim. The remaining question is whether the Defendants herein acted or failed to act with deliberate indifference to a known risk of serious harm.

Dr. David first saw Plaintiff in December 2016. Plaintiff's next visit to Dr. David was on January 11, 2017. At that time, the medication and foot soaks that Dr. David had prescribed in December had failed to improve Plaintiff's condition. Instead, Plaintiff's toe had become more painful, turned dark purple, and continued to bleed. Dr. David prescribed Cipro and continued the foot soaks. Dr. David saw Plaintiff again on March 3, 2017, when Plaintiff's condition had worsened despite the second round of Cipro he had received a month earlier; Dr. David still did not order any treatment other than the ineffective foot soaks. Only

on April 4, 2017, when Plaintiff had suffered with his condition for over 5 months and begged for proper treatment, did Dr. David finally refer Plaintiff for removal of the infected, ingrown toenail.

The length of time that Dr. David continued to treat Plaintiff with foot soaks and antibiotics, while Plaintiff's painful condition grew worse, along with Dr. David's delay in referring Plaintiff for removal of the toenail that cause the infection, could support a claim for deliberate indifference against him. Alternatively, a fact finder may determine that Dr. David's treatment plan was reasonable, or merely constituted negligence or malpractice. Further factual development will be necessary in order to resolve these issues. Therefore, Plaintiff's deliberate indifference claim in **Count 1** against Dr. David shall proceed for further review.

### Count 2 – Deliberate Indifference – Warden

If a prisoner is under the care of prison medical professionals, a non-medical prison official "will generally be justified in believing that the prisoner is in capable hands." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004)). In contrast, a prison official may be found to be deliberately indifferent to a prisoner's serious medical needs if "they have a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner." *Hayes v. Snyder*, 546 F.3d 516, 527 (7th Cir. 2008). *See also Perez v. Fenoglio*, 792 F.3d 768, 782

(7th Cir. 2015) (prisoner could proceed with deliberate indifference claim against non-medical prison officials who failed to intervene despite their knowledge of his serious medical condition and inadequate medical care, as explained in his "coherent and highly detailed grievances and other correspondences"); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (supervisory defendant may be held liable if he/she "know[s] about the [unconstitutional] conduct and facilitate[s] it, approve[s] it, condone[s] it, or turn[s] a blind eye."). Under this authority, where a plaintiff informs prison officials that he is being denied access to health care, those officials may be liable under 42 U.S.C. § 1983 for their inaction.

In Plaintiff's case, it does not appear that Warden Dennison is a medical professional. However, Plaintiff followed the emergency grievance procedure on December 29, 2016, to inform Dennison that his serious infection was not being properly treated by the Shawnee medical staff. Arguably, Plaintiff's description in the grievance of his problem and the lack of adequate medical care was sufficient to place Dennison on notice of a possible Eighth Amendment violation. If Dennison received Plaintiff's grievance (a question that cannot be answered at this time), yet took no action, Dennison may be found to have acted with deliberate indifference toward Plaintiff's serious medical needs.

At this early stage, Plaintiff has adequately pled a deliberate indifference claim against Dennison in **Count 2**. Therefore, this count may also proceed for further consideration.

## Dismissal of Count 3 – Wexford Health Sources, Inc.

Defendant Wexford Health Sources, Inc., ("Wexford") is a corporation that employs Defendant David and provides medical care at the prison, but it cannot be held liable solely on that basis. A corporation can be held liable for deliberate indifference only if it had a policy or practice that caused the alleged violation of a constitutional right. *Woodward v. Corr. Med. Serv. of Ill., Inc.*, 368 F.3d 917, 927 (7th Cir. 2004). *See also Jackson v. Ill. Medi-Car, Inc.*, 300 F.3d 760, 766 n.6 (7th Cir. 2002) (private corporation is treated as though it were a municipal entity in a § 1983 action).

Here, Plaintiff does not claim that any individual Defendant either acted or failed to act as a result of an official policy espoused by Defendant Wexford. Indeed, Plaintiff's statement of claim includes no allegations whatsoever against Wexford. Merely invoking the name of a defendant is not sufficient to state a claim against that party. *See Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption.").

For these reasons, Plaintiff's claim against Wexford in **Count 3** shall be dismissed without prejudice at this time.

## Disposition

**COUNT 3** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. Defendant **WEXFORD HEALTH SOURCES, INC.** is **DISMISSED** from this action without prejudice.

The Clerk is **DIRECTED** to send Plaintiff a blank form motion for the recruitment of counsel.

The Clerk of Court shall prepare for Defendants **DENNISON** and **DAVID**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court. Plaintiff shall include with the original paper to be

filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or counsel. Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a United States Magistrate Judge for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to the United States Magistrate Judge for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for

want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED: June 18, 2017**

/s/ David R. Herndon

Judge Herndon
2017.06.18
13:41:06 -05'00'

United States District Judge